UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES DUFF,

          Plaintiff,

v.

C. LAPONSIE et al.,

          Defendants.
_____/

Case No. 2:23-cv-149

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF officials: Corrections Officers C. Laponsie, L.T. Jefferys, Unknown Otto, and Unknown Casey; Prison Counselor D. Plum; Residential Unit Manager T. Corey-Spiker; Assistant Deputy Warden J. Clark; and Sergeants M. Jogrs and Unknown Hansen. (Compl., ECF No. 1, PageID.1–2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that on May 27, 2023, and "on every Sunday and Saturday that followed for no less than 1 month," he did not receive "clean up" and did not receive "supplies, such as grievances, toothpaste, toothbrush, [and] soap" because he "was asleep and [is] hearing impaired."[2] (*Id.*, PageID.3.) Plaintiff states that he has "state-issued hearing aids, and staff have been aware of [his] disability since [he] arrived at [URF]" on March 9, 2023. (*Id.*)

On May 28, 2023, Plaintiff talked to Defendants Otto, Casey, and Laponsie and an unnamed "second shift D wing officer," and Plaintiff informed them that he "never received [his] supplies or clean up to clean [his] cell." (*Id.*) "[T]hey all stated to [Plaintiff] that clean up and supplies had been passed out and that [Plaintiff] should have been awake." (*Id.*) The next day, May 29, 2023, Plaintiff sent a kite to Defendants Clark, Jogrs, Hansen, Plum, and Corey-Spiker, and "they told [Plaintiff] to file a grievance." (*Id.*) Plaintiff then filed a grievance about the matter, and ultimately, his step III grievance was denied on July 24, 2023. (*Id.*) Plaintiff claims that "[t]he action by the staff at [URF] has caused [him] se[vere] mental distress." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise Eighth Amendment and Fourteenth Amendment Equal Protection Clause claims under 42 U.S.C. § 1983, as well as a claim under the Americans with Disabilities Act (ADA). (*See id.*, PageID.3–4.) As relief, Plaintiff seeks monetary damages and injunctive relief. (*Id.*, PageID.4.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

4

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

**A.    Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, the Court construes Plaintiff's complaint to raise Eighth Amendment claims against Defendants regarding the conditions of his confinement, as well as Fourteenth Amendment equal protection claims.

### 1. Eighth Amendment Claims

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from

6

liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In this action, Plaintiff alleges that on May 27, 2023, and "on every Sunday and Saturday" that followed for no less than 1 month," he did not receive "clean up" and did not receive "supplies, such as grievances, toothpaste, toothbrush, [and] soap" because he "was asleep and [is] hearing impaired." (Compl., ECF No. 1, PageID.3.) On May 28, 2023, Plaintiff informed Defendants Otto, Casey, and Laponsie and an unnamed "second shift D wing officer" that he "never received [his] supplies or clean up to clean [his] cell." (*Id.*) "[T]hey all stated to [Plaintiff] that clean up and supplies had been passed out and that [Plaintiff] should have been awake." (*Id.*) The next day, May 29, 2023, Plaintiff sent a kite to Defendants Clark, Jogrs, Hansen, Plum, and Corey-Spiker about the matter, and "they told [Plaintiff] to file a grievance." (*Id.*)

As an initial matter, Plaintiff fails to allege any facts showing how Defendant Jeffreys was personally involved in the alleged violation of his constitutional rights. Specifically, when listing the Defendants named in this action, Plaintiff identifies Jeffreys as a Defendant, however, Plaintiff fails to name Defendant Jeffreys in the body of his complaint. (*See id.*, PageID.2, 3.) Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Furthermore, turning to the merits of Plaintiff's claims, to the extent Plaintiff intended to allege that Defendants are liable for the conditions of his confinement during the one-month period in which he claims that he did not receive "clean up" and other supplies, he fails to show that Defendants knew that he had not received "clean up" and other supplies for the entire one-month

7

period. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Specifically, Plaintiff alleges that he did not receive "clean up" and other supplies for the first time on May 27, 2023. (Compl., ECF No. 1, PageID.3.) Plaintiff informed Defendants Otto, Casey, and Laponsie about this issue on May 28, 2023, and he then sent a kite about the issue to Defendants Clark, Jogrs, Hansen, Plum, and Corey-Spiker on May 29, 2023. (*Id.*) Plaintiff does not allege that he informed anyone about the issue after May 29, 2023, let alone Defendants. Under these circumstances, Plaintiff's allegations only show that Defendants knew that Plaintiff had not received "clean up" and the other noted supplies for, at most, a two-day period. Plaintiff fails to allege any facts about the condition of his cell and about whether he had access to other hygiene items during this two-day period. Plaintiff therefore fails to allege sufficient facts to suggest that the deprivations that Defendants knew about were anything other than temporary inconveniences. And, allegations about temporary inconveniences do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)).

Furthermore, even setting aside the issue regarding Defendants' lack of knowledge of, and involvement in, Plaintiff's conditions of confinement during the entire one-month period in question, as explained below, Plaintiff still fails to state a claim upon which relief may be granted. Although Plaintiff alleges that he was denied "clean up" during this one-month period, Plaintiff

8

fails to allege any facts about the condition of his cell. *Cf. Foster v. Ohio*, No. 1:16-cv-920, 2018 WL 6726965, at *14 (S.D. Ohio Dec. 21, 2018) (recognizing that "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while '*substantial* deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration" (citation omitted)). *But see Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment). Additionally, Plaintiff fails to allege any facts about whether he already had the items in question prior to May 27, 2023, and therefore, could continue to use what he had previously received, or whether he could obtain these items in some other way to supplement what he did not receive on the noted Saturdays and Sundays. In sum, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Further, as to Plaintiff's claim that he did not receive "grievances, toothpaste, toothbrush, [and] soap" for one month, courts have held that the denial of these items for similar periods of time constituted temporary inconveniences that do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Matthews v. Murphy*, No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (holding that an inmate's allegations that he was deprived of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of a constitutional violation); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (concluding that the denial of a toothbrush and toothpaste for 35 days constituted a mere temporary inconvenience); *Robertson v. McRay*, No. 03-22823-CIV, 2006

9

WL 2882502, at *7 (S.D. Fla. July 28, 2006) (finding that the failure to provide indigent kits containing hygiene items and envelopes, stamps and paper more than half the time over a two-year period did not violate the Eighth Amendment). Moreover, Plaintiff alleges no harm or risk of harm arising from his failure to receive these items on Saturdays and Sundays during the one-month period in question. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (recognizing that the objective component of the Eighth Amendment test is typically not met by temporary deprivations that result in no physical injury); *James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (holding that a 49-day denial of a comb, deodorant, and cleaning supplies, none of which jeopardized the prisoner-plaintiff's health, failed to satisfy the objective component of an Eighth Amendment claim); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a 69-day denial of toothpaste may constitute a constitutional deprivation if plaintiff had to be treated by a dentist for bleeding and receding gums and tooth decay); *Holder v. Merline*, No. Civ.A. 05-1024 RBK, 2005 WL 1522130, at *6 (D.N.J. June 27, 2005) (concluding that a three-week deprivation of a toothbrush and sneakers does not implicate the Eighth Amendment where no physical effects resulted).

Accordingly, for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment conditions of confinement claim against Defendants.

### 2. Fourteenth Amendment Equal Protection Clause Claims

The Court also construes Plaintiff's complaint to raise an equal protection claim under the Fourteenth Amendment. (*See* Compl., ECF No. 1, PageID.4.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim,

a plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Here, Plaintiff vaguely suggests that Defendants have discriminated against him because of his hearing-related disability. (*See* Compl., ECF No. 1, PageID.4, 5.) Disability is not a suspect class or a quasi-suspect class. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001). Although Plaintiff alleges in a conclusory manner that Defendants have taken "discriminatory actions," he fails to allege any facts to suggest that Defendants have treated other inmates differently, let alone that the other inmates were similarly situated.

"'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). In this action, Plaintiff does not allege that any inmates were similarly situated in all relevant respects, nor can the Court reasonably infer that any other inmates were similarly situated in all relevant respects from the facts alleged. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion. Plaintiff's equal protection claims are wholly conclusory.

Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claim.

### B. ADA Claims

Finally, the Court construes Plaintiff's complaint to raise a claim under the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).[3]

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998); *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted)). The proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). In this action, Plaintiff does not indicate in which capacity he sues Defendants. Because Plaintiff may not pursue ADA claims against Defendants in their

---

[3] Similarly, section 504 of the Rehabilitation Act (RA) protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

individual capacities, any intended ADA claims against Defendants in their individual capacities will be dismissed.[4]

As to any intended official capacity ADA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044–47 (E.D. Mich. 2005). The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will assume, without deciding, that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

Turning to the merits of Plaintiff's ADA claims, Plaintiff alleges that he is hearing impaired and has "state-issued hearing aids." (Compl., ECF No. 1, PageID.3.) At this stage of the proceedings, the Court assumes that Plaintiff has alleged sufficient facts to show that he has a disability pursuant to the ADA. *See* 42 U.S.C. § 12102(2). However, as explained below, Plaintiff's allegations do not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability.

Plaintiff alleges that starting on May 27, 2023, and continuing for a month, "he did not receive "clean up" and did not receive "supplies, such as grievances, toothpaste, toothbrush, [and] soap" on Saturdays and Sundays because he "was asleep and [is] hearing impaired." (Compl., ECF No. 1, PageID.3.) Plaintiff talked to Defendants Otto, Casey, and Laponsie about the matter on May 28, 2023, and in response, they advised him that he "should have been awake." (*Id.*) The

---

[4] The Court would also reach the same conclusion for any intended claims under the RA. *See, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted).

following day, Plaintiff informed Defendants Clark, Jogrs, Hansen, Plum, and Corey-Spiker about the matter in a kite, and they advised him to file a grievance about the issue. (*Id.*) Plaintiff does not allege that Defendants had any further involvement in the matter after May 29, 2023.

It is clear that Plaintiff believes he did not receive "clean up" and other supplies because of his hearing impairment; however, Plaintiff's own allegations show that he did not receive these items because he was asleep. Although not specifically alleged by Plaintiff, presumably, he believes that if he was not hearing impaired, he would have been awakened by the noise in his unit when the supplies were being passed out. However, this is not a case where Plaintiff was not provided with hearing aids or was provided inadequate hearing aids. To the contrary, Plaintiff states that he has "state-issued hearing aids," and he alleges no facts to suggest that they are inadequate. Under these circumstances, the facts alleged by Plaintiff show that he did not receive "clean up" and other supplies because he was asleep and had perhaps chosen not to wear his hearing aids or perhaps continued sleeping despite wearing his hearing aids, not because of his hearing-related disability.

Plaintiff, therefore, has failed to show that Defendants took any of the above-discussed actions because of his disability. Plaintiff's conclusory allegations of an ADA violation without specific supporting factual allegations fail to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. For these reasons, Plaintiff's ADA claims against Defendants will be dismissed.[5]

---

[5] If Plaintiff had raised any RA claims, for the same reasons set forth herein, the Court would also dismiss these claims.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: October 31, 2023

/s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge